The STATE of Ohio ex rel. CONROY, Appellee,

v.

WILLIAMS, Mayor, et al., Appellants.

[Cite as *State ex rel. Conroy v. Williams,* 185 Ohio App.3d 69, 2009-Ohio-6040.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 08 MA 60.

Decided Nov. 13, 2009.

70

Green, Haines, Sgambati Co., L.P.A., Dennis Haines, Joseph Kondela, and Charles W. Oldfield, for appellee.

Harrington, Hoppe & Mitchell, Ltd., Neil D. Schor, and Matthew D. Gurbach, for appellant.

WAITE, Judge.

{¶ 1} Appellants, George M. McKelvey, Jay Williams, George Wallace Jr., Nancy Tipple, Dorothy Johnson, and the city of Youngstown, appeal the judgment entry of the Mahoning County Court of Common Pleas denying the individual appellants' motion for summary judgment on the basis of political-subdivision immunity.

{¶ 2} Because if the allegations are true McKelvey's actions may constitute discrimination in violation of Ohio statutory law, the trial court did not err when it denied McKelvey's motion for summary judgment on the basis of sovereign immunity. On the other hand, appellee, James Conroy, has not produced nor even alleged any evidence of discriminatory or other conduct on the part of Williams, and, therefore, the trial court erred in denying his motion for summary judgment on the basis of sovereign immunity. Finally, the trial court did not err in denying sovereign immunity to Wallace, Tipple, and Johnson, because appellee is not seeking to hold them personally liable for his alleged damages. Their motion for summary judgment on the basis of sovereign immunity should have been denied as moot. The judgment of the trial court is affirmed in part, with respect to Williams and reversed in part with respect to McKelvey, Wallace, Tipple, and Johnson. Because the city raises political-subdivision immunity for the first time on appeal as regards the city itself as a party, we decline to consider the issue as to that named appellant.

{¶ 3} Appellee filed this mandamus action on October 20, 2005, seeking to compel McKelvey, then Mayor of Youngstown, and the city to appoint him to the position of police officer in accordance with the "rule-of-ten provision" set forth in R.C. 124.27. On March 13, 2006, appellee amended his complaint to add reverse discrimination claims against McKelvey and the city premised on R.C. 4112.02(A), Ohio public policy, and Section 1983, Chapter 42, U.S.Code. The amended complaint also added Williams, the current Mayor of Youngstown, and the three individuals appointed by McKelvey to police-officer positions as defendants. It is important to note that there are no allegations involving Williams as to the claims of discrimination.

{¶ 4} A brief review of the facts is instructive. On August 23, 2003, Youngstown City Council passed Ordinance 03–213, adopting R.C. 124.90 as part of Police Officer Civil Service Entrance Exam No. 1744. R.C. 124.90 permits a municipality to waive, suspend, or alter any of the provisions of R.C. Chapter 124, "if such waiver, suspension, or alteration is necessary for the municipal corporation to comply with any federal law or any rules adopted pursuant to federal law concerning discrimination in employment."

{¶ 5} Ordinance 03–213 suspended the application of the rule-of-ten provision codified in R.C. 124.27 for the purposes of Exam No. 1744. According to appellee, "[a]ppellants failed to establish cause to suspend application of R.C. 124.27 because the record contains no evidence that suspension of R.C. 124.27 was necessary to comply with a federal law or rule adopted pursuant to federal law as required by R.C. 124.90."

{¶ 6} The Youngstown Civil Service Commission issued two certified examination result lists for Exam No. 1744 on January 24, 2005: a majority list and a minority/females list. Appellee achieved the fourth highest score on the majority list, and the fifth highest score if the two lists were combined.

{¶ 7} In June of 2005, McKelvey appointed three individuals from the minority/female list to fill vacant officer positions: Wallace, a black male, who placed second on the minority/female list and seventh if the two lists were combined; Tipple, a while female, who placed third on the minority/female list and ninth if the two lists were combined; and Johnson, a black female, who placed nineteenth on the minority/female list. The original complaint in this matter was filed approximately four months later.

{¶ 8} On July 2, 2007, appellants filed a motion for summary judgment on all four of the claims asserted in the amended complaint. In the alternative, the individual appellants moved for summary judgment on the state-law claims based upon R.C. Chapter 2744. On February 6, 2008, the trial court summarily denied the motion in its entirety. This timely appeal followed.

{¶ 9} "When a trial court denies a motion in which a political subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and is therefore a final, appealable order pursuant to R.C. 2744.02(C)." *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, syllabus.

{¶ 10} An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court as set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Before summary judgment can be granted, the trial court must determine that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267. When a court considers a motion for summary judgment the facts must be taken in the light most favorable to the nonmoving party. Id.

{¶ 11} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, *and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.*" (Emphasis sic.) *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264. If the moving party carries its burden, the nonmoving party has the reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. Id. at 293, 662 N.E.2d 264. In other words, in the face of a properly supported motion for summary judgment, the nonmoving party must produce some evidence that suggests that a reasonable fact-finder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.* (1997), 122 Ohio App.3d 378, 386, 701 N.E.2d 1023.

## CLAIMED ASSIGNMENT OF ERROR NO. 1

{¶ 12} "The trial court erred in denying summary judgment to appellants mayor Jay Williams, former Mayor George M. McKelvey, George Wallace, Nancy Tipple, and Dorothy Johnson pursuant to O.R.C. § 2744 *et seq.*"

{¶ 13} We must, at the outset, clarify that the sole issue properly before us is whether, based on R.C. Chapter 2744, the five named persons in this action are immune from suit. Because of the way that this matter has been presented, this is a more complicated task than it appears. This suit involves a mandamus action by an applicant for city employment who alleges that he was denied employment because of reverse discrimination on the part of the city officials. However, this matter involves an appointment to the civil service. Appellee alleges, essentially, that the city illegally certified a list that gave preferential treatment to minorities and women and that had this preference not been incorrectly given, he would have been hired. In mandamus, a complainant must show a clear legal duty on the part of the government, a clear right to the requested relief, and that the complainant has no other legal means of recourse. *State ex rel. Grosso v. Boardman Local School Dist.,* 7th Dist. No. 08MA105, 2009-Ohio-5080, 2009 WL 3068755. Thus, in his original complaint, appellee must show that the city had a legal duty to hire him, he has a clear right to the appointment as police officer, and he lacks other redress. Layered on top of this original action is appellee's claim that the reason he did not get appointed was that the city acted in a discriminatory manner.

{¶ 14} While appellants apparently requested relief in the form of summary judgment on the underlying mandamus claims, both these and the request for summary judgment based on sovereign immunity were denied. While we are here to address only the denial of the immunity claims, because by statute these are the only claims immediately appealable, the issues in this case are so intertwined that some discussion on all claims will be necessary.

{¶ 15} R.C. Chapter 2744 provides governmental immunity to political subdivisions and their employees. Specifically, R.C. 2744.02(A)(1) provides that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

{¶ 16} R.C. 2744.03(A)(7) preserves common-law immunity for political subdivisions and specific employees, including county prosecuting attorneys, city directors of law, village solicitors, or similar chief legal officers of a political subdivision, assistants to such persons, and judges of Ohio courts.

{¶ 17} More generally, employees of political subdivisions engaged in governmental or proprietary functions are immune from liability unless it can be shown that (a) an employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities, (b) an employee's acts or omissions were done with malicious purpose, in bad faith, or in a wanton or reckless manner, or (c) civil liability is expressly imposed on an employee by a section of the Revised Code. See R.C. 2744.03(A)(6).

{¶ 18} The term "employee" is defined in R.C. 2744.01(B) as "any elected or appointed official of a political subdivision." Among the list of identified governmental functions is "[t]he provision * * * of police * * * services or protection" and the "enforcement * * * of any law." R.C. 2744.01(C)(2)(a) and (i).

{¶ 19} Appellants and appellee undertake the three-step analysis commonly associated with political-subdivision immunity in their appellate briefs. First, pursuant to R.C. 2744.02(A), general immunity applies when the political subdivision or its employee is engaged in a governmental or proprietary function. Second, the political subdivision may lose general immunity based upon several exceptions listed in R.C. 2744.02(B). In the event that one of the exceptions listed in subsection (B) is applicable, the political subdivision must then prove that one of the defenses listed in R.C. 2744.03 applies in order to be immune from suit.

{¶ 20} However, where immunity is asserted by an employee of a political subdivision, courts need only undertake a two-step analysis. See *Knox v. Hetrick*, 8th Dist. No. 91102, 2009-Ohio-1359, 2009 WL 792357, ¶ 15; *Stoll v. Gardner*, 182 Ohio App.3d 214, 2009-Ohio-1865, 912 N.E.2d 165, ¶ 14. After establishing that he or she was engaged in a governmental or proprietary function, a political-subdivision employee may assert immunity as a defense to any civil claim unless the plaintiff can prove that one of the three exceptions listed in R.C. 2744.03(A)(6) apply. Appellee contends that R.C. 2744.03(A)(6)(c)

excepts the individual appellants from the general immunity granted in R.C. 2744.02(A) because R.C. 4112.02 prohibits gender discrimination by employers.

{¶ 21} Prior to asserting their substantive arguments, both parties argue that the other side committed procedural default with respect to the individual immunity claims. In their motion for summary judgment before the trial court, Appellants argued that the city is a political subdivision, enforcement of laws is a governmental function, and none of the exceptions in R.C. 2744.02(B)(1) through (5) apply; therefore, the city is entitled to immunity. Appellants further argued that none of the exceptions in R.C. 2744.03(A)(6) apply and, therefore, the individual appellants are immune from appellee's damage claims.

{¶ 22} In appellee's response to appellants' argument in his memorandum in opposition to the motion for summary judgment before the trial court, he states:

{¶ 23} "Defendants also argue that the individually named Defendants have statutory immunity under R.C. Chapter 2744 from the discrimination claims. However, R.C. Chapter 2744 is titled 'Political Subdivision Tort Liability.' Any argument based on the immunities offered by that chapter of the Revised Code are clearly in the context of a negligence claim and are inapplicable to Defendant [sic] discrimination claims. Notwithstanding that R.C. Chapter 2744 on its face is inapplicable, it defies logic to argue that a political subdivision, bound by the laws and rules of civil service which exist to ensure fair play in the hiring of public employees, can be immune from a discrimination claim. Regardless, it is clear that [appellee's] R.C. Chapter 4112 discrimination claim withstands summary judgment."

{¶ 24} Appellants now contend that appellee waived his R.C. 2744.03(A)(6)(c) argument because he failed to raise it before the trial court. In response, appellee alleges that "[n]either Appellants' summary judgment motion nor their brief [on appeal] addressed the application (or lack of application) of any of the exceptions set forth in R.C. 2744.02(B) save the conclusory statement that none applied. * * * Thus, [appellee] never had a reciprocal obligation to show that one of the exceptions applied."

{¶ 25} As stated earlier, the exceptions listed in R.C. 2744.02(B) are relevant only to political-subdivision immunity and, therefore, need not be considered in the analysis of the individual appellants' immunity claims. Furthermore, despite the fact that appellee failed to specifically cite R.C. 2744.03(A)(6)(c), he argued that R.C. Chapter 2744 immunity does not apply to discrimination claims. Therefore, he did not waive his R.C. 2744.02(A)(6)(c) argument because it was raised, albeit not concisely, to the trial court.

{¶ 26} Turning to the substantive arguments, it is unlawful for an Ohio employer to refuse to hire an individual because of race or sex. R.C. 4112.02(A).

The statutory definition of the term "employer" includes "the state, any political subdivision of the state, any person employing four or more persons within the state, and any person acting directly or indirectly in the interest of an employer." R.C. 4112.01(A)(2).

{¶ 27} The Ohio Supreme Court has held that "[f]or purposes of R.C. Chapter 4112, a supervisor/manager may be held jointly and/or severally liable with her/his employer for discriminatory conduct of the supervisor/manager in violation of R.C. Chapter 4112." See *Genaro v. Cent. Transport, Inc.* (1999), 84 Ohio St.3d 293, 703 N.E.2d 782, syllabus.

{¶ 28} The caselaw applying R.C. 2744.03(A)(6) is sparse, because most discrimination cases filed against political subdivisions are filed by current employees and are predicated on R.C. 2744.09(B). That statute authorizes "[c]ivil actions by an employee, or the collective bargaining representative of an employee, against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision."

{¶ 29} However, at least one Ohio appellate court seems to recognize that R.C. 2744.03(A)(6)(c) excepts political-subdivision employees from statutory immunity for discrimination claims. *Albert v. Trumbull Cty. Bd. of Mental Retardation/Developmental Disabilities* (Sept. 30, 1999), 11th Dist. No. 98–T–0095, 1999 WL 957066, *5 ("As a general matter, this court agrees with appellant that a political subdivision and its employees may be liable for discriminatory practices pursuant to various provisions within R.C. Chapter 4112").

{¶ 30} McKelvey is named in this suit because of an action undertaken by him while engaged in a governmental function. At first blush, it appears easy to conclude that he is immune from suit. But because R.C. Chapter 4112 has been interpreted to include supervisory and managerial employees in the statutory definition of "employer," we find that the general immunity provided in R.C. 2744.02(A) does not apply to McKelvey, because civil liability is imposed by R.C. 4112.02(A) for discriminatory hiring practices. In other words, it is possible for McKelvey to be held personally liable for damages resulting from his hiring decision even though he was engaged in a governmental function when he appointed Wallace, Tipple, and Johnson to the police department.

{¶ 31} Turning to Wallace, Tipple, and Johnson, they are named only in the mandamus action, and appear to have been named solely in their official capacities. Appellee conceded as much at oral argument when his counsel stated that the appointees were named because they have an interest in the outcome of the mandamus action. Realistically, they were named solely because they were appointed to positions to which appellee claims entitlement. At no point is it alleged that they acted or failed to act in any governmental or proprietary

manner. Since they were not sued because of their actions, discriminatory or otherwise, it is apparent that R.C. Chapter 2744 cannot apply to these named appellants. Because appellee asserts no actionable conduct on the part of Wallace, Tipple, and Johnson individually and because appellee does not appear to be seeking damages from them, that portion of their motion for summary judgment based upon sovereign immunity was properly denied by the trial court as moot.

{¶ 32} Although the denial of the appointees' motion for summary judgment on the issue of sovereign immunity was properly denied, we must here note that based on our review of the record, there were other reasons why summary judgment should have been granted to these persons.

{¶ 33} Because of the discretionary nature of civil-service appointments, we are at a loss to see how appellee can ever demonstrate two essential elements of his mandamus action; that is, that he has a clear legal right to the relief requested or that appellants have a clear legal duty to appoint him. *Grosso*, 2009-Ohio-5080, 2009 WL 3068755 (stating the elements of a mandamus action). The named appellants sought summary judgment both on sovereign-immunity grounds and by arguing that the appointments were made using proper governmental discretion. Clearly, if the reverse-discrimination claims against McKelvey are true, he was properly denied summary judgment not only on sovereign-immunity grounds but as to his discretionary argument as well. However, assuming arguendo that appellee is correct and there should have been only one list certified to the appointing authority, a brief review of the law regarding civil-service appointments reveals absolutely no duty on the part of a governmental official to appoint a person off of a proper list. Even if appellee had placed into the number one position on a properly certified list, he could be appropriately passed over for appointment by the appointing authority. At oral argument, counsel for appellee attempted to argue that the matter required further discovery, because it was possible that all others with higher scores than appellee may have declined appointment. Whether or not this is true, it has no legal significance to this case. An appointing authority may pass over any person on a properly certified list and never has a duty to appoint any individual off of a certified list.

{¶ 34} This is true despite the Fourth District Court of Appeals decision in *State ex rel. DeMint v. Chillicothe* (1991), 76 Ohio App.3d 315, 601 N.E.2d 612, granting mandamus in a somewhat similar case. The court in *DeMint* did not even begin to address the elements of DeMint's mandamus action before granting relief. The Second District Court of Appeals, in *State ex rel. Chambers v. Jordan* (Feb. 8, 1985), 2d Dist. No. 2007, 1985 WL 7643, *2, which undertook an analysis of the then "rule of three," codified in R.C. 124.27, concluded pursuant to Ohio law that no individual on the civil-service list could possibly demonstrate a clear

legal right to be appointed to the civil-service position or the clear legal duty on behalf of the respondent to appoint a specific person. Id. at *2.

{¶ 35} Hence, based on *Chambers*, we must note that the denial of the motion for summary judgment based only on the issue of sovereign immunity on behalf of Wallace, Tipple, and Johnson should not be misinterpreted as a validation of their continued presence in this action by this court. However, because these named individuals are before us solely for the purposes of their motion for summary judgment on the issue of sovereign immunity, and sovereign immunity does not apply, we do not here find that they were improperly denied summary judgment.

{¶ 36} Although appellee did not seek damages from Wallace, Tipple, and Johnson and their involvement is clearly limited, the same is not true of Williams in his individual capacity. Appellee specifically requests that "judgment be entered in favor of [appellee] against McKelvey, *Williams* and City for compensatory damages in an amount in excess of Twenty-five Thousand Dollars ($25,000.00)." (Emphasis added.) However, there are no other pertinent claims in the complaint, either originally or as amended, regarding Williams. Simply stated, there is no evidence or even allegation in the record that Williams has or had engaged in any decision-making whatsoever, nor has he allegedly engaged in any discriminatory conduct.

{¶ 37} In the amended complaint, appellee asserts that "[t]he City and Williams have failed and refused to comply with their obligations under the Ohio Civil Service law to make appointments to the Youngstown Police Department from the ten highest applicants as certified by the Commission." However, it appears that appellee simply replaced McKelvey's name with Williams's name in the amended complaint. As earlier argued, this suit is based on a decision made by McKelvey as a government official acting in a governmental capacity. Because it is alleged that the decision was the product of reverse discrimination, however, sovereign immunity does not apply as it ordinarily would to these allegations. The complaint does not contain allegations as to conduct specific to Williams.

{¶ 38} At oral argument, appellee argued that Williams is liable for discrimination under a continuing-violation theory, despite the fact that Williams is not named in the R.C. Chapter 4112 claim. The continuing-violation theory is typically invoked to bring a claim of discrimination within the statute of limitations, see e.g. *Ohio Civ. Rights Comm. v. Triangle Real Estate Servs., Inc.*, 10th Dist. No. 06AP–157, 2007-Ohio-1809, 2007 WL 1125842, not to establish discriminatory conduct on the part of a subsequently elected or appointed official who played no role in the original decision. Because there is no evidence or even any allegation in the amended complaint that Williams engaged in discriminatory

conduct, he is immune from any award that might be issued by the trial court in this action.

{¶ 39} As a consequence, appellants' first assignment of error is sustained in part, with respect to Williams, and overruled in part, with respect to McKelvey, Wallace, Tipple, and Johnson, individually.

## CLAIMED ASSIGNMENT OF ERROR NO. 2

{¶ 40} "Summary judgment should be granted to appellant city of Youngstown pursuant to O.R.C. § 2744 et seq. On appellee's first cause of action because the decision of appellant McKelvey to appoint appellants Wallace, Tipple, and Johnson was discretionary and was not conducted in bad faith, with malicious purpose, or in a wanton or reckless manner."

{¶ 41} Appellants concede that they failed to raise political-subdivision immunity on the part of the city in their summary-judgment motion before the trial court. Appellants contend that we should nevertheless consider the defense "because of pertinent case authority which was issued after the trial court's order of March 13, 2008 denying Appellants' motion for summary judgment and one day prior to Appellants' perfection of their appeal."

{¶ 42} In *Ohio Bell Tel. Co. v. DiGioia–Suburban Excavating*, 8th Dist. Nos. 89708 and 89907, 2008-Ohio-1409, 2008 WL 802641, the Eighth District Court of Appeals reversed a decision denying governmental immunity to Cuyahoga County and the city of Cleveland in a case brought by owners of property damaged in a gas explosion. However, nothing in *Ohio Bell* provides an exception to appellants' failure to raise the immunity defense before the trial court.

{¶ 43} Appellee argues that appellants' failure to raise the immunity defense on behalf of the city in their motion for summary judgment constitutes a waiver of the defense. In *Turner v. Cent. Local School Dist.* (1999), 85 Ohio St.3d 95, 98, 706 N.E.2d 1261, the defendant failed to assert statutory immunity in its answer. After summary-judgment motions had been resolved and the matter had been set for trial, the trial court granted a motion to amend the answer to include sovereign immunity.

{¶ 44} Based upon the failure of the defendant to advance any explanation for its failure to raise statutory immunity in their original answer, the Supreme Court held that the defendant should have attempted to amend its answer to include the immunity defense prior to its initial motion for summary judgment. Because the 11th-hour amendment delayed the trial and forced the case through the appellate system twice, the Supreme Court found that the trial court abused its discretion in granting the amendment.

{¶ 45} Appellants raise their statutory-immunity challenge on behalf of the city for the first time on appeal, and appellee raises his waiver argument for the first time on appeal. " 'Despite the fact that appellate courts review summary judgment decisions de novo, "[t]he parties are not given a second chance to raise arguments that they should have raised below." ' " *Litva v. Richmond,* 172 Ohio App.3d 349, 2007-Ohio-3499, 874 N.E.2d 1243, ¶ 18, quoting *Aubin v. Metzger,* 3d Dist. No. 1-03-08, 2003-Ohio-5130, ·2003 WL 22229400, ¶ 10, quoting *Smith v. Capriolo* (Apr. 11, 2001), 9th Dist. No. 19993, 2001 WL 358387.

{¶ 46} The parties should litigate the city's claim of sovereign immunity before the trial court. Accordingly, we cannot consider this claim, or appellee's claim that appellants have waived the city's immunity defense. Therefore, appellants' second assignment of error is overruled.

{¶ 47} In summary, the judgment of the trial court is affirmed with respect to McKelvey, because, in the event that appellee can prove that McKelvey committed race and sex discrimination, he may not avail himself of sovereign immunity pursuant to R.C. 2744.03(A)(6)(c). On the other hand, the judgment of the trial court is reversed with respect to Williams because appellee has not raised any allegations as to Williams individually that subject him to suit, here. Because appellee does not seek damages against Wallace, Tipple, and Johnson in their individual capacities, and it appears that they are not being sued based upon any of their own decisions or actions, sovereign immunity does not apply and the trial court's denial of their individual motions for summary judgment is affirmed. Finally, the city itself raised the issue of sovereign immunity for the first time on appeal. As a consequence, we decline to consider the issue, and remand the matter to the trial court for consideration of the city's sovereign-immunity claim, including whether the city has waived its claim by failing to raise it earlier.

Judgment affirmed in part
and reversed in part,
and cause remanded.

DONOFRIO, J., and VUKOVICH, P.J., concur.